UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARLOS MALDONADO,<br><br>                  Plaintiff,<br><br>    v.<br><br>DREW BOSTOCK, et al.,<br><br>                  Defendants. | CASE NO. 2:23-CV-00760-LK-BAT<br><br>ORDER REQUESTING SUPPLEMENTAL BRIEFING |

This matter comes before the Court on the parties' Joint Motion for Entry of Consent Judgment. Dkt. No. 16. They previously attempted to stipulate to a conditional dismissal of Carlos Maldonado's habeas petition—one that would have required the Court to order the Immigration Judge ("IJ") to hold a bond hearing. Dkt. No. 14 at 2. The Court deferred ruling on their motion and directed the parties to (1) couch their request in "a proper vehicle . . . such as a motion other than a motion to dismiss," and (2) provide "a sufficient legal basis supporting the requested relief." Dkt. No. 15 at 4. The parties then withdrew their stipulated motion and moved for entry of a consent judgment. Dkt. No. 16 at 1. Although this new motion supplies several of the previously missing facts and attempts to fill in some of the legal blanks, the Court requests supplemental

ORDER REQUESTING SUPPLEMENTAL BRIEFING - 1

briefing regarding its authority to entertain this matter and regarding the Department of Homeland Security's discretionary authority.

## I. BACKGROUND

Petitioner Carlos Maldonado, a citizen and national of Honduras, first entered the United States in 2013 as an unaccompanied minor. Dkt. No. 16 at 3. In February 2014, the Government placed Maldonado in removal proceedings, and in April 2018, the Government removed him to Honduras as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.*; Dkt. No. 1 at 4. On April 17, 2022, the Department of Homeland Security, Customs and Border Protection ("DHS" and "CBP") apprehended Maldonado a quarter mile east of the Andrade, California port of entry after he entered the country without permission. Dkt. No. 8-6 at 2; *see also* Dkt. No. 8-3 at 2 (February 2023 Notice to Appear alleging that Maldonado entered the United States "at or near" San Luis, Arizona). United States Immigration and Customs Enforcement ("ICE") immediately reinstated the prior removal order against Maldonado and exercised its discretion to detain him pending removal. Dkt. No. 1 at 4; Dkt. No. 16 at 3; *see* 8 U.S.C. § 1231(a)(5), (a)(6). And, following reinstatement of that order, an asylum officer determined that Maldonado possesses a credible fear of persecution or torture in Honduras. Dkt. No. 8-2 at 2. DHS thereafter referred Maldonado to an IJ for initiation of "withholding-only proceedings." *Id.* at 2-3; Dkt. No. 16 at 3; *see Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2282–83 (2021) (detailing procedure at this stage).

Meanwhile, in November 2022, ICE "erroneously posted" a document to its official website containing the "names and other personally identifiable information, along with immigration information, of approximately 6,000 noncitizens in ICE custody." *See* Statement on Improper Disclosure of Noncitizen Personally Identifiable Information, https://www.ice.gov/news/releases/statement-improper-disclosure-noncitizen-personally-identifiable-information (last visited June 30, 2023). The parties clarify in their latest motion that

ORDER REQUESTING SUPPLEMENTAL BRIEFING - 2

this disclosure included Maldonado's information. Dkt. No. 16 at 3. In an apparent effort to remedy the resulting harm, ICE canceled Maldonado's reinstated removal order and moved the Immigration Court to dismiss his withholding-only proceedings. Dkt. No. 1 at 5; Dkt. No. 16 at 3. The Immigration Court granted ICE's motion and terminated withholding-only proceedings. Dkt. No. 16 at 3.

The next day, DHS issued Maldonado a Notice to Appear ("NTA") and filed it with the Immigration Court, formally charging him with inadmissibility under Section 1182(a)(6)(A)(i). *Id.* at 3–4; Dkt. No. 8-3. The NTA reflects, as relevant here, that Maldonado entered the United States near San Luis, Arizona but was "not then admitted or paroled after inspection by an Immigration Officer." Dkt. No. 8-3 at 2 ("You are an alien present in the United States who has not been admitted or paroled."). DHS simultaneously issued a Form I-200 Warrant for Arrest. Dkt. No. 16 at 4.[1] And last, it provided Maldonado with a Notice of Custody Determination stating that it would be detaining him pending a final administrative determination. Dkt. No. 8-4 at 2. The Notice of Custody Determination cites Section 236 of the Immigration and Nationality Act (8 U.S.C. § 1226) as the basis for DHS's detention of Maldonado. *Id.*

Maldonado, with the assistance of counsel, appeared for a bond hearing before an IJ soon thereafter. Dkt. No. 1 at 5; Dkt. No. 9 at 1. Although the IJ concluded that Maldonado poses no danger to the community and is not a flight risk, she denied bond "based on lacking jurisdiction to set bond in his case." Dkt. No. 9 at 1.[2] Maldonado unsuccessfully moved for a bond redetermination. In denying his request, the IJ concluded that Maldonado was detained under Section 1225(b)(2)(A) as an "applicant for admission" because he was present in the United States

---

[1] The arrest warrant is not in the record.

[2] No recording or transcript of the bond hearing was created. *Id.*; Dkt. No. 1 at 5.

ORDER REQUESTING SUPPLEMENTAL BRIEFING - 3

1    but had not been admitted. Dkt. No. 8-6 at 2–3; *see* 8 U.S.C. § 1225(a)(1). As the Court noted in
2    its prior order, this distinction is critical—in fact, it is the crux of the party's dispute—because
3    Section 1225(b)(2) mandates detention for the duration of removal proceedings, *see Jennings v.*
4    *Rodriguez*, 138 S. Ct. 830, 845 (2018), while noncitizens held under Section 1226(a) "may request
5    a bond hearing before an IJ at any time before a removal order becomes final," *Rodriguez Diaz v.*
6    *Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

7          The IJ accordingly found that she lacked jurisdiction to redetermine Maldonado's bond.
8    Dkt. No. 8-6 at 4–5. She reasoned that Section 1225(b)(2)'s mandatory custody provisions control
9    over Section 1226(a)'s permissive custody provisions, "which apply to a different class of
10   noncitizens—those who have previously been admitted to the United States and have subsequently
11   become removable." *Id.* at 4. Maldonado's appeal remains pending before the Board of
12   Immigration Appeals. Dkt. No. 16 at 4; *see* Dkt. No. 8-7 (notice of appeal).

13         After Maldonado filed his habeas petition and moved for emergency injunctive relief, ICE
14   reviewed his case and determined that he is in fact detained under Section 1226(a) "based on the
15   agency's discretionary decision to place him into removal proceedings via the issuance and filing
16   of the February 2023 NTA." Dkt. No. 16 at 4. The parties therefore agree that Maldonado is
17   eligible for a bond hearing. *Id.* However, they have not provided sufficient information to convince
18   the Court that this is so—or that it has authority to entertain the parties' request for relief.

19   **II.  DISCUSSION**

20   **A.     Jurisdiction and Exhaustion**

21         In addressing the Court's authority to review the IJ's determination, the parties argue that
22   the IJ erred in finding that Maldonado is detained under 8 U.S.C. § 1225(b) rather than 8 U.S.C. §
23   1226(a). Dkt. No. 16 at 5. But the motion does not go so far as to assert that Maldonado "is in
24   custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2241(c)(3); *see Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) ("[A] federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review *Casas–Castrillon* bond hearing determinations for constitutional claims and legal error[.]" (cleaned up)). The parties instead argue only that their request for a bond hearing "implicates a legal issue regarding the applicable detention authority." Dkt. No. 16 at 5. Nor does the motion provide any basis for this Court to entertain the parties' request before Maldonado exhausts his administrative remedies. *See Leonardo*, 646 F.3d at 1160 ("When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused."). The Court therefore requests supplemental briefing on its jurisdiction and whether it should dismiss the petition or stay these proceedings due to Maldonado's failure to exhaust.

**B.      Sections 1225 and 1226**

Assuming the Court has authority to entertain the parties' motion, this case hinges on whether Maldonado is detained under Section 1225 or 1226. In the words of the Ninth Circuit, Section 1225(b) "supplement[s] § 1226's detention scheme." *Rodriguez Diaz*, 53 F.4th at 1197. Section 1225(b) authorizes the government to detain certain noncitizens seeking admission into the country, while Section 1226(a) grants the government authority to detain noncitizens already in the country pending the outcome of removal proceedings. *Aleman Gonzalez v. Barr*, 955 F.3d 762, 766 (9th Cir. 2020), *rev'd on other grounds sub nom. Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022). The Supreme Court in *Jennings* specifically held that Section 1226(a) does not supplant Section 1225(b) once an arriving noncitizen's removal proceedings commence. 138 S. Ct. at 845; *see also Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 928–29 (W.D. Wash. 2020); *Leke v. Hott*, 521 F. Supp. 3d 597, 601 n.5 (E.D. Va. 2021).

The parties contend that Maldonado's detention shifted from Section 1231(a)(6) to Section 1226(a) when ICE issued an NTA, issued a Form I-200 arrest warrant, and filed the NTA with the Immigration Court to initiate removal proceedings under 8 U.S.C. § 1229a. Dkt. No. 16 at 6; *see also* Dkt. No. 8-3 (February 14, 2023 NTA). The parties argue that this action was a "discretionary determination," and that DHS may "choose," pursuant to its "prosecutorial discretion," to detain a noncitizen under Section 1226(a) by issuing an NTA and arrest warrant. Dkt. No. 16 at 2, 4, 6.

Although DHS generally wields broad discretion to arrest and detain noncitizens pending removal proceedings under Section 1226(a), that discretion does not extend beyond the reach of the statute—a reach that, as noted above, does not encompass an applicant for admission. Maldonado appears to be an applicant for admission because he is a noncitizen "present in the United States" and "has not been admitted[.]" 8 U.S.C. § 1225(a)(1). The record indicates that Maldonado was apprehended by CBP agents a quarter mile east of the Andrade, California port of entry after he entered the country without permission. Dkt. No. 8-6 at 2; *see, e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 676 (S.D. Tex. 2021) (petitioner was appropriately held under Section 1225(b) "given his apprehension near Brownsville, Texas at an undesignated place of entry after unlawfully crossing the Rio Grande without a valid entry document"); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1982 (2020) (a noncitizen "who tries to enter the country illegally is treated as an 'applicant for admission,' and a [noncitizen] who is detained shortly after unlawful entry cannot be said to have 'effected an entry'" (internal citations omitted)); 8 U.S.C. § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to a[ noncitizen], the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer."). Indeed, and as the IJ noted, counsel conceded at the hearing that Maldonado "has never been admitted to the United States." Dkt. No. 8-6 at 5.

The parties provide no authority for the proposition that DHS retains discretion to sidestep or override Section 1225 by issuing an NTA and arrest warrant. They cite to 8 C.F.R. §§ 236.1(b) and 235.1(f)(2) in an effort to prove otherwise, but neither of these regulations grants such sweeping authority. Dkt. No. 16 at 6. Section 236.1(b) states that certain immigration officers have authority to issue and serve a Form I-200 arrest warrant "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed[.]" That does not mean that DHS may trigger Section 1226(a) at any time and in any circumstance (e.g., when Section 1225(b) otherwise applies) by issuing an arrest warrant. Section 235.1(f)(2) similarly does not appear to offer support for the parties' position. And notably, it reiterates that an applicant for admission is subject to removal under Section 1225:

> A[ noncitizen] present in the United States who has not been admitted or paroled or a[ noncitizen] who seeks entry at other than an open, designated port-of-entry, except as otherwise permitted in this section, is subject to the provisions of section 212(a) [Section 1182(a)] of the Act and to removal under section 235(b) [Section 1225(b)] or 240 [Section 1229a] of the Act.

8 C.F.R. § 235.1(f)(2).[3] Nor does the Court's independent review of the relevant regulations indicate that DHS has discretion to "choose" between Sections 1225 and 1226 when it processes an applicant for admission. *See* Dkt. No. 16 at 5–6 (claiming that instead of processing a noncitizen for expedited removal under Section 1225(b), DHS may "choose" to take a noncitizen into custody under Section 1226(a) by issuing an NTA); *see also Florida v. United States*, __ F. Supp. 3d __, No. 3:21-CV-1066-TKW-ZCB, 2023 WL 2399883, at *26 (N.D. Fla. Mar. 8, 2023) (even if a noncitizen crossing the border "fell within § 1226(a)'s general language, § 1225(b)'s specific mandatory language would trump § 1226(a)'s general permissive language").

---

[3] Although this regulation indicates that noncitizens who have not been admitted to the country are also subject to removal under Section 1229a, it does not purport to grant DHS absolute discretion to apply Section 1225(b) or 1229a.

ORDER REQUESTING SUPPLEMENTAL BRIEFING - 7

For these reasons, the Court requests supplemental briefing regarding DHS's discretion and the degree of deference, if any, the Court must accord to DHS's classifications, regardless of whether they are favorable to the petitioner.

### III.  CONCLUSION

The Court REQUESTS that the parties file a supplemental brief of no more than 4,200 words addressing the topics described above by August 28, 2023. Absent a timely submission, the Court will deny the parties' Joint Motion for Entry of Consent Judgment. Dkt. No. 16.

Dated this 8th day of August, 2023.

Lauren King
United States District Judge